Filed 4/29/25  P. v. Sand CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DENNIS KEITH SAND,<br><br>        Defendant and Appellant. | A170320<br><br>(Humboldt County<br>Super. Ct. No. CR2303454) |

Defendant Dennis Keith Sand appeals a judgment entered upon a jury verdict finding him guilty of transporting methamphetamine.  (Health & Saf. Code, § 11379, subd. (a).)  He contends the evidence is insufficient to support the conviction.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Late on the evening of November 21, 2023, a police officer with the City of Eureka, Tyler Moore, saw a Volkswagen Jetta with defective taillights and license plate lights.  He recognized the car as being associated with defendant and another person, Norma Payton, and a records check showed it was registered to both of them.  Moore had the car pull over into a parking lot, parked behind it, and saw that Payton was driving and defendant was in the passenger seat.  Payton handed Moore her driver's license, and he returned to the patrol vehicle and ran a records check, then brought the license back to

1

the car. While he was by the patrol vehicle, he could not see through the back window into the Jetta.

Moore and another officer asked defendant to get out of the Jetta. Moore was paying attention to defendant rather than to Payton, who was still in the driver's seat. As defendant stood next to the open passenger side door, Moore searched him and found no contraband.[1] During the search, Moore was facing the Jetta and could "kind of" see into it; however, he could not see all the way into the car from his standing position. The other officer took defendant to the patrol vehicle, and Moore asked Payton to get out of the car. Payton stepped out of the car while Moore was still standing by the open passenger door.

Moore then searched the Jetta, which he described as "pretty cluttered" in both front and back. On the car's floorboard, "kind of tucked underneath the front" of the passenger seat and close to the door, he found a "fairly large" plastic bag containing methamphetamine. He located it after removing trash and personal belongings from the floorboard in front of the seat. The bag weighed 28.98 grams, including the packaging. On the center console and front seat Moore found glass pipes. In the front driver's side door pocket he found a digital scale, which had a white residue on it, and three smaller plastic bags. A search of Payton's person revealed a smaller bag of methamphetamine, weighing a total of 2.13 grams, glass pipes of the sort used to smoke methamphetamine, and $64 in cash, in the form of 12 five-dollar bills and four one-dollar bills.

---

[1] The parties stipulated that the search of both defendant's person and the car were lawful. Although the jury was not informed of it, defendant was subject to search because he was on probation when these events occurred.

Moore testified that narcotics possessed for sale were often found in smaller bags. Payton was not arrested.

Marvin Kirkpatrick, an investigator with the district attorney's office, testified as an expert in possession of controlled substances for sale and the investigation of such cases. He testified that in determining whether a person possessed methamphetamine for sale, he looked not just at the amount of the drug but also at the presence of currency, "pay and owe" sheets, and items that might be used to break down and sell the drug, such as scales and bags that could be used for packaging. An ounce of methamphetamine was a common amount Kirkpatrick encountered in his work. Street dealers normally sold amounts in the range of one-half ounce to a tenth of a gram.[2] In Kirkpatrick's view, the presence of an ounce of methamphetamine, a scale, and packaging materials in the form of smaller plastic bags was sufficient to indicate the drugs were possessed for sale.

Kirkpatrick testified that drug dealers often work in pairs, often of a boyfriend and girlfriend. One might carry the controlled substance, and the other such items as the scale, packaging material, and money. When drug dealers are stopped by law enforcement officers while driving, they might seek to hide the drugs under the seat or in other places such as door pockets or the center console. It is common for drug users to sell drugs to support their habit.

Defendant played for a jury a video taken from the body camera of one of the officers at the scene. It showed Officer Moore approaching the passenger side of the Jetta. Defendant came out of the car, and Moore and another officer searched him as they stood next to the open passenger door.

---

[2] Kirkpatrick testified that an ounce is 28.5 grams.

3

Defendant then moved away from the car and, as Moore still stood by the open passenger door, Payton got out of the car.

The jury convicted defendant of transportation of a controlled substance. (Health & Saf. Code, § 11379, subd. (a).) The trial court sentenced him to two years in prison for an unrelated case for which he had been on probation (Pen. Code, § 30305), and a consecutive term of one year for the current conviction. This timely appeal ensued.

## DISCUSSION

Defendant contends the evidence is insufficient to show he possessed the methamphetamine found under the passenger seat of the car. He points out that both he and Payton were in the car, that the scale and plastic bags were in the driver's side door pocket, and that only Payton had methamphetamine or cash on her person. And, he contends, the evidence does not show that he, rather than Payton, concealed the bag of methamphetamine found under the passenger seat: after Payton gave Moore her license, Moore walked back to the patrol vehicle to check for warrants; Moore could not see into the car from behind while he was checking the license, he could not see all the way into the car while he was standing at the passenger side searching Sand, and his attention was primarily on Sand during the search. This evidence, defendant argues, precludes a conclusion beyond a reasonable doubt that defendant himself possessed the bag of methamphetamine under his seat.

Our review of this contention is deferential. The test is " ' "whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738–739.) We " ' "view the evidence in the light most favorable to the People and . . . presume in support of the judgment the existence of every fact the trier

4

could reasonably deduce from the evidence.' " " (*Id.* at p. 739.) Although the evidence must be " ' "reasonable, credible, and of solid value," ' " it is the jury, not we, that must be persuaded of the defendant's guilt, and " ' " ' " '[i]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " ' " (*People v. Jones* (2013) 57 Cal.4th 899, 960–961.)

Possession of illegal drugs may be either physical or constructive. (*People v. Williams* (1971) 5 Cal.3d 211, 214–215.) "Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*Id.* at p. 215.) Possession may be established by circumstantial evidence (*ibid.*), and " '[t]he inference of dominion and control is easily made when the contraband is discovered in a place over which the defendant has general dominion and control: his residence [citation], his automobile [citation], or his personal effects.' " (*People v. Busch* (2010) 187 Cal.App.4th 150, 162.) Possession has been found shown, for example, where contraband drugs were found at the home the defendant shared with another (*People v. Mooring* (2017) 15 Cal.App.5th 928, 945); where marijuana was found in the center console of the defendant's car and immediately accessible to him, although others were also in the vehicle (*Busch*, at pp. 154, 162); and where a plastic bag with illegal drugs was found in plain view between the passenger seat of a van where the defendant had been seated and the engine cover (*People v. Mendoza* (1986) 183 Cal.App.3d 390, 395–396).

The evidence here meets these standards. The larger bag of methamphetamine was found under the passenger seat where defendant had been sitting. It was tucked slightly under the seat, behind debris on the floorboard, and close to the passenger-side door.

Defendant suggests this evidence is consistent with two scenarios under which he did not possess the methamphetamine: either that Payton secreted the bag under the seat while Moore was at the patrol car checking her license, or that she hid the drugs under the seat while officers were searching defendant and not paying attention to the interior of the car. But the first scenario would require Payton to place the methamphetamine under the seat on the far side of defendant *while he was still in the seat*. If this occurred, the jury could reasonably infer he and Payton shared dominion and control over it. As to the suggestion that Payton hid the drugs while Moore was searching defendant, the jury could reasonably find it implausible that Payton leaned down and reached across to the passenger side of the Jetta, placing the bag under the outer portion of the passenger seat *directly next to the open door where Moore and the other officer were standing*, without being detected by the officers or appearing even briefly on the body camera video. The evidence is sufficient to support the conviction.[3]

**DISPOSITION**

The judgment is affirmed.

---

[3] In conjunction with this appeal, appellant filed a petition for writ of habeas corpus, *In re Dennis Keith Sand*, A172541. We deny the petition by separate order filed this date.

TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*People v. Sand* (A170320)

7